WOOD, Circuit Judge,
concurring.
While I endorse without reservation the majority’s reading of the 1991 contract that is at the heart of this ease, I write separately to note my disagreement with the discussion of Fed.R.CivP. 44.1 in both the majority opinion, ante at 627-28, and in Judge Posner’s concurring opinion. Rule 44.1 itself establishes no hierarchy for sources of foreign law, and I am unpersuaded by my colleagues’ assertion that expert testimony is categorically inferior to published, English-language materials. Exercises in comparative law are notoriously difficult, because the U.S. reader is likely to miss nuances in the foreign law, to fail to appreciate the way in which one branch of the other country’s law interacts *639 with another, or to assume erroneously that the foreign law mirrors U.S. law when it does not. As the French might put it more generally, apparently similar phrases might be faux amis. A simple example illustrates why two words might be “false friends.” A speaker of American English will be familiar with the word “actual,” which is defined in Webster’s Third New International Dictionary as “existing in act, ... existing in fact or reality: really acted or acting or carried out — contrasted with ideal and hypothetical .... ” Webster’s Third New International Dictionary 22 (1993). So, one might say, “This is the actual chair used by George Washington.” But the word “actuel” in French means “present” or right now. Le Robert & Collins Compact Plus Dictionnaire 7 (5th ed.2003). A French person would thus use the term “les événements actuéis” or “actualité” to refer to current events, not to describe something that really happened either now or in the past.
There will be many times when testimony from an acknowledged expert in foreign law will be helpful, or even necessary, to ensure that the U.S. judge is not confronted with a “false friend” or that the U.S. judge understands the full context of the foreign provision. Some published articles or treatises, written particularly for a U.S. audience, might perform the same service, but many will not, even if they are written in English, and especially if they are translated into English from another language. It will often be most efficient and useful for the judge to have before her an expert who can provide the needed precision on the spot, rather than have the judge wade through a number of secondary sources. In practice, the experts produced by the parties are often the authors of the leading treatises and scholarly articles in the foreign country anyway. In those cases, it is hard to see why the person’s views cannot be tested in court, to guard against the possibility that he or she is just a mouthpiece for one party. Prominent lawyers from the country in question also sometimes serve as experts. That too is perfectly acceptable in principle, especially if the question requires an understanding of court procedure in the foreign country. In many places, the academic branch of the legal profession is entirely separate from the bar. Academic writings in such places tend to be highly theoretical and removed from the day-to-day realities of the practice of law.
To be clear, I have no objection to the use of written sources of foreign law. Rule 44.1 permits' the court to consider “any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.” The written sources cited by both of my colleagues throw useful light on the problem before us in this case, and both were well within their rights to conduct independent research and to rely on those sources. There is no need, however, to disparage oral testimony from experts in the foreign law. That kind of testimony has been used by responsible lawyers for years, and there will be many instances in which it is adequate by itself or it provides a helpful gloss on the literature. The tried and true methods set forth in Fed.R.Evid. 702 for testing the depth of the witness’s expertise, the facts and other relevant information on which the witness has relied, and the quality of the witness’s application of those principles to the problem at hand, suffice to protect the court against self-serving experts in foreign law, just as they suffice to protect the process for any other kind of expert.
Finally, my colleagues see no material difference between a judge’s ability to research the laws of Louisiana or Puerto Rico and her ability to research the laws of *640 France, Australia, or Indonesia. With respect, I cannot agree with them. Like the laws of the other 49 states, the law of Louisiana is based on many sources. One important such source is the Code Napoléon, but it is not the only source. Louisiana has legislation on the usual topics, it is part of the federal system, and its courts function much like the courts of other states. See, e.g., Kensie Kim, Mixed Systems in Legal Origins Analysis, 83 S. Cal. L.Rev. 693, 720 n. 123 (2010) (noting that, though its civil procedure is in the civil law form, Louisiana’s criminal procedure has adopted a U.S. common-law form); William R. Forrester, Jr., New Technology & The 2007 Amendments to the Code of Civil Procedure, 55 La. BaR J. 236 (2008) (noting that the 2007 amendments to Louisiana’s civil procedure rules adopt most of the provisions in the Federal Rules of Civil Procedure for electronically stored information); Harry J. Haynsworth, The Unified Business Organizations Code, 29 Del. J. Corp. L. 83, 101 n. 110 (2004) (noting that Louisiana has adopted several provisions of the Uniform Commercial Code); William R. Forrester, Jr., Recent Changes to the Code of Civil Procedure, 51 La. Bar J. 342 (2004) (discussing amendments to Louisiana’s civil procedure rules governing expert discovery); David W. Robertson, Summary Judgment and Burden of Proof, 45 La. Bar J. 331 (1997) (discussing the new Louisiana rule on summary judgment and noting that it was derived directly from the U.S. Supreme Court’s decision in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
Puerto Rico’s system is somewhat less accessible for non-Spanish-speaking Americans. Interestingly, one finds Puerto Rican materials under the “International/Worldwide Materials” database in Westlaw®, not under the U.S. States database. This is so even though Congress has expressly defined Puerto Rico as a “state” for purposes of the diversity jurisdiction statute. See 28 U.S.C. § 1332(e) (2010). There is no denying the fact, however, that Puerto Rico is far more integrated into the U.S. legal system than any foreign country is. Since Puerto Rico falls within the jurisdiction of the First Circuit, see 28 U.S.C. § 41 (2010), the judges of that court regularly hear cases implicating Puerto Rican law. Furthermore, American law has greatly influenced the Puerto Rican legal system. See, e.g., Harry J. Haynsworth, The Unified Business Organizations Code, 29 Del. J. Corp. L. 83, 86 n. 32, 87 (2004) (stating that Puerto Rico has adopted the Delaware General Corporation Law and the Revised Uniform Partnership Act); Symeon C. Symeonides, Choice of Law in the American Courts in 1998: Twelfth Annual Survey, 47 Am. J. Comp. L. 327, 354 (1999) (noting that Puerto Rican choice-of-law jurisprudence was influenced by the Second Restatement); Luis E. Rodríguez-Rivera, Genesis of Puerto Rico’s Environmental Law, 67 Revista Juridioa Universidad de Puerto Rioo 201, 209-11 (1998) (discussing the impact of the American legal tradition on Puerto Rican law, especially environmental law). As a practical matter, therefore, the Supreme Court was on firm ground when it assumed, in the text of Rule 44.1, that only the law of a “foreign country” would be subject to the rule’s procedures, not the law of a U.S. state, territory, or commonwealth.
For these reasons, although I join the majority’s reasoning in all other respects, I do not share their views about the use of expert testimony to prove foreign law. I therefore concur in the judgment to that extent.